UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JAMAL PETTY,                                  :    07 Civ. 6090 (WHP)

           Petitioner,              :    MEMORANDUM & ORDER

      -against-                               :

WILLIAM J. CONNOLLY, Superintendent,          :
Fishkill Correctional Facility, et ano.,
                                              :
           Respondents.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 8/15/11 |

WILLIAM H. PAULEY III, District Judge:

        Petitioner Jamal Petty ("Petty") seeks a writ of <u>habeas corpus</u> pursuant to 28 U.S.C. § 2254 challenging his conviction for manslaughter in the first degree and criminal possession of a weapon in the second degree in New York Supreme Court, Bronx County. On March 22, 2011, Magistrate Judge Gabriel W. Gorenstein issued a report and recommendation (the "Report") recommending that Petty's petition be denied. Petty filed objections to the Report on May 4, 2011. For the following reasons, this Court concludes that Petty's objections are without merit and adopts Magistrate Judge Gorenstein's thorough and well-reasoned report in full.

## BACKGROUND[1]

        On the night of July 2, 1990, Petty shot and killed Derrick Torrence ("Torrence"). (Report at 2.) The shooting was the culmination of a dispute between Petty and Torrence over a

---

[1] The underlying facts and procedural history of the state court proceedings are set forth in detail in the Report.

dice game eleven days earlier. (Report at 3.) In the days prior to the shooting, Torrence made several threats to Petty's life, one of which resulted in the shooting of another individual by Torrence's friend. (Report at 3-5.)

Two witnesses—Ebony Boone and Ta-Tanisha Dean—testified at trial that they did not see Torrence holding or reaching for a gun and that he had his back to Petty at the time of the shooting. (Report at 2-3.) Boone also testified that Torrence started to run when he saw Petty. (Report at 2.) Police officers at the scene did not find a weapon. (Report at 3.) In addition, the prosecution's medical expert concluded that Torrence was shot in the back of the neck, and experts for both sides agreed that the wound indicated Torrence was not facing Petty when he was shot. (Report at 3, 5-6.)

Petty raised two objections at trial. First, he objected repeatedly to the court's refusal to permit Gail Scott to testify about Torrence's threats to Petty in the days before the shooting. (Report at 4-6.) Second, he objected to the court's jury instructions on the initial aggressor element of the defense of justification. The trial court instructed the jury that a justification defense was unavailable if Petty was the initial aggressor on July 2. (Report at 7.) The court then instructed the jury, inter alia, that they could consider prior threats by Torrence in determining "what . . . Petty reasonably believed" on the night of the shooting, but that "past violent acts or threats do not themselves render deadly physical force defensive." (Report at 7-8.) The jury deliberated for three days, requesting clarification on various issues including the justification defense. (Report at 8-9.)

On December 9, 1992, Petty was acquitted of second degree murder but convicted of manslaughter in the first degree and criminal possession of a weapon in the second and third

degrees. (Report at 1.) He was sentenced to 8-1/3 to 25 years imprisonment and is currently on parole. (Report at 1.)

On appeal, Petty argued that (1) the trial court's instruction on the justification defense was erroneous, and (2) its preclusion of Scott's testimony violated his right to call witnesses in his own defense. (Report at 9.) Both the Appellate Division and the New York Court of Appeals ("Court of Appeals") affirmed Petty's conviction. (Report at 9.) As to the justification defense, the Court of Appeals explained that "the trier of fact must first determine whether the defendant was the initial aggressor," and if not, "must then determine whether defendant's conduct (e.g., use of deadly force) was reasonable." Petty, 852 N.E.2d at 1161. In assessing the trial court's instruction, the Court of Appeals found that the jury should have been permitted to consider prior threats in evaluating the first question because those threats "may indicate an intent to act upon them, thereby creating a probability that the deceased victim has in fact acted upon them as the initial aggressor." Petty, 852 N.E.2d at 1161. The Court of Appeals held that the instruction was harmless error, however, because "there was overwhelming evidence disproving the justification defense and no reasonable possibility that the verdict would have been different had the charge been correctly given." Petty, 852 N.E.2d at 1162. As to the exclusion of Scott's testimony, the Court of Appeals held that the trial court acted within its discretion. Petty, 852 N.E.2d at 1162.

Petty advances two principal objections to the Report: that Magistrate Judge Gorenstein erred in finding that (1) the trial court's erroneous instruction did not violate Petty's due process rights, and (2) the trial court's preclusion of Scott's testimony was proper.

DISCUSSION

I. Legal Standard

A court may "accept, reject, or modify" the findings and recommendations of a magistrate judge "in whole or in part." 28 U.S.C. § 636(b)(1). A court conducts a de novo review of findings to which objections are made, and reviews the remainder for clear error on the face of the record. 28 U.S.C. § 636(b)(1); N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter, 657 F. Supp. 2d 410, 414 (S.D.N.Y. 2009); see also Greene v. WCI Holdings Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997) ("[A] district court evaluating a magistrate judge's recommendation is permitted to adopt those portions of the recommendation to which no 'specific, written objection' is made, as long as those sections are not clearly erroneous." (quotations omitted) (emphasis added).) Where petitioner's objections simply repeat the same arguments found in the original papers submitted to the magistrate judge, "the [c]ourt is only obliged to review the Report for clear error." Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

As to Petty's substantive arguments, "with respect to any claim that was adjudicated on the merits in [s]tate court proceedings," a writ may issue only if the adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); Carvajal v. Artus, 633 F.3d 95, 111 (2d Cir. 2011).

II. Erroneous Jury Instruction

The Second Circuit employs a three-step analysis for challenges to a jury instruction: (1) whether the trial court's instruction was erroneous under state law; (2) whether

4

the failure to give the proper instruction resulted in a denial of due process; and (3) whether the erroneous instruction constituted an unreasonable application of Supreme Court law. Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005).

Petty objects to the Report's determination at step two that the trial court's erroneous instruction on the justification defense did not violate his due process rights. A trial court's failure to give the proper instruction results in a denial of due process when "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (quoting Cupp v. Naughton, 414 U.S. 141, 147 (1973)). This requires a showing that there is a "substantial likelihood" that a jury would have responded differently if the correct charge had been given. See Jackson, 404 F.3d at 625 (quoting Davis, 270 F.3d at 131). Petty argues that Magistrate Judge Gorenstein misapplied the "substantial likelihood" standard by failing to consider "the effect [of the ailing charge] on the specific jury that considered the evidence." (Pet'r's Objections to the Magistrate Judge's Report and Recommendation at 4).

Petty relies on the Second Circuit's opinions in Jackson and Davis, where the refusal to give an instruction on the justification defense constituted a due process violation because there was a "substantial likelihood" that the jury would have responded differently had the instruction been given. Jackson, 404 F.3d at 625; Davis, 270 F.3d at 131. In Jackson, the court found that the jury's conviction for manslaughter instead of murder evidenced its "open[ness] to crediting" the defendant's testimony. 404 F.3d at 625. And in Davis, the court held that, because the jury accepted the defense of extreme emotional disturbance, they "showed that [they] generally accepted the truthfulness of Davis's testimony." Davis, 270 F.3d at 131. Petty argues that Magistrate Judge Gorenstein would have found a similar due process violation

5

had he considered the fact that the jury in his trial acquitted him of murder (and therefore credited some of his testimony) and that the jury repeatedly asked for clarification on the justification defense instruction.

However, Jackson and Davis are distinguishable for two reasons. First, in both cases the Second Circuit held that the defendant was denied his only chance at acquittal because the jury was not instructed on the justification defense at all. Jackson, 404 F.3d at 625; Davis, 270 F.3d at 131. There was no comparable omission at Petty's trial. His jury received an instruction on justification and could have acquitted Petty of all homicide charges on that basis. The trial court's error was therefore far less prejudicial than the errors in Jackson and Davis.

Second, unlike the evidence in Jackson and Davis, Petty's own testimony was not credible given the contradictory witness testimony and medical evidence at trial. In Davis, the defendant's "testimony was in almost all respects uncontested, and in several important respects corroborated." 270 F.3d at 116. In Jackson, the defendant's justification defense "relie[d] not on his own testimony—he did not testify at the trial—but rather on the statements and testimony of numerous witnesses, including states witnesses, as well as on his videotaped confession." 404 F.3d at 625-26. In contrast, Petty's story could not be squared with the medical evidence indicating the bullet entered the back of Torrence's neck, the testimony of two other witnesses that Torrence had his back to Petty and began to run away, and the fact that Torrence did not have a gun. As the Court of Appeals observed, this evidence demonstrated overwhelmingly that Petty was the initial aggressor, such that there was no substantial likelihood that the jury would have concluded otherwise.

The fact that the jury asked for clarification of the instruction on the justification defense does not alter this conclusion. Petty offers no support for this contention, and this Court

6

finds none in Jackson and Davis. In those cases, the juries' verdicts indicated their openness to crediting the defendants' testimony. Jackson, 404 F.3d at 625; Davis, 270 F.3d at 131. Here, the possibility of jury confusion during deliberations indicates no similar openness. Indeed, any attempt to extract a favorable view of Petty's testimony from the jury's requests for clarification amounts to speculation. Accordingly, the trial court's erroneous instruction did not violate Petty's due process rights.

III. Trial Court's Preclusion of Scott's Testimony

A court should review a magistrate judge's recommendations for clear error where the petitioner repeats the same arguments he set forth in the original petition. Ortiz, 558 F. Supp. 2d at 451. Here, Petty reiterates his original arguments regarding the preclusion of Scott's testimony. Because there is no clear error in that portion of the Report, this Court adopts those findings in full.

Finally, Petty does not object to the remainder of the Report and it is not facially erroneous. Accordingly, this Court affirms and adopts the remaining portions of the Report in full.

## CONCLUSION

For the foregoing reasons, this Court adopts Magistrate Judge Gorenstein's March 22, 2011 report and recommendation in its entirety. Petitioner Jamal Petty's petition for a writ of habeas corpus is denied. Because Petty has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: August 15, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

Counsel of Record:

Natalia Rea, Esq.
The Legal Aid Society
Criminal Appeals Bureau
199 Water Street
New York, NY 10038
*Counsel for Petitioner*

Dana Levin, Esq.
Assistant District Attorney
198 East 161st Street
Bronx, NY 10451
*Counsel for Respondent*